40 So.3d 1139 (2010)
Michelle A. JORDAN
v.
The STATE of Louisiana through the BOARD OF ADMINISTRATORS OF LOUISIANA STATE UNIVERSITY AGRICULTURAL AND MECHANICAL COLLEGE, HEALTH SERVICES DIVISION and the Medical Center of Louisiana at New Orleans.
No. 2009-CA-1277.
Court of Appeal of Louisiana, Fourth Circuit.
May 26, 2010.
*1140 Daniel J. Mackel, Jr., New Orleans, LA, for Plaintiff/Appellee.
James D. "Buddy" Caldwell, Attorney General, Don Paul Landry, Assistant Attorney General, LA Dept. of Justice, Litigation Division, New Orleans, LA for Defendant/Appellant, the State of Louisiana through the Board of Administrators of Louisiana State University Agricultural and Mechanical College.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge MAX N. TOBIAS, JR., Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
Michelle Jordan suffered nerve injury and paralysis to her right leg following a vaginal hysterectomy. A medical malpractice *1141 claim was filed, alleging that she was not informed of the possible complications involved with the surgery and the defendants failed to obtain her consent for the procedure. Following discovery, the trial court granted summary judgment in Ms. Jordan's favor and against the Medical Center of Louisiana (MCLNO) and awarded $500,000.00 in damages. For the reasons that follow we affirm.
In August 2004, Ms. Jordan went to the MCLNO seeking treatment for pelvic pain. Subsequently, on September 2, 2004 she underwent a vaginal hysterectomy. During her recovery, Ms. Jordan experienced weakness and pain, impaired movement, and disability in her right leg. Even though Ms. Jordan underwent physical therapy, her condition failed to improve.
Ms. Jordan filed a complaint with the Medical Review Panel alleging medical negligence and lack of informed consent against MCLNO. The Medical Review Panel found that there was a material issue of fact concerning Ms. Jordan's consent that should be resolved by the court. This litigation followed.
On May 11, 2005, MCLNO provided Ms. Jordan with a full certified copy of her medical record. The record did not contain a signed consent form. After filing the petition in this matter, Ms. Jordan forwarded a request for production of documents to MCLNO. That request specifically asked for:
Any and all written consents signed by the plaintiff, Michelle A. Jordan, concerning any operation or procedure performed for her on September 2, 2004 at the Medical Center of Louisiana at New Orleans.
Approximately five months later, MCLNO responded to the request for production of documents by stating that the requested documents could not be produced "due to flood damage caused by Hurricane Katrina". Again, the full certified copy of Ms. Jordan's medical record was produced in May 2005, prior to Katrina, did not contain a signed consent form. The reasonable presumption would be that whatever files or documents were lost due to flooding, were identical to the medical record produced prior to Hurricane Katrina.
Accordingly, with MCLNO failing to present evidence that a genuine issue of material fact existed as to whether Ms. Jordan consented to the surgery, she filed a motion for summary judgment. In support of the summary judgment, Ms. Jordan provided the trial court with: 1) her affidavit attesting that no written or verbal consent was given from her to perform the vaginal hysterectomy; 2) her deposition testimony; 3) an affidavit from a board certified physician for orthopedic and orthopedic surgery regarding the nature and cause of her injury; 4) an affidavit and report from a vocational rehabilitation consultant; 5) an affidavit from an economist regarding lost wages; 6) the defendant's response to plaintiff's request for production of documents; and 7) plaintiff's certified medical record. The motion for summary judgment was set for hearing. The defendant was served with the motion for summary judgment and hearing date, but failed to file an opposition.
At the hearing for the motion for summary judgment, the defendant presented the court with an opposition together with an unsigned affidavit together with excerpts from the plaintiff's deposition and medical records. Nothing offered by the defendant established that Ms. Jordan had consented to the vaginal hysterectomy. The court did not allow the defendant to file the opposition because it was untimely under the requirements of La. C.C.P. art. *1142 966(B)[1]. Thereafter, the trial court, considering Ms. Jordan's motion for summary judgment and the evidence presented, awarded her the $500,000.00 limit available for medical liability for state services pursuant to La. R.S. 40:1299.39 F.
The proper standard of review for an appellate court determining the correctness of a granting of summary judgment is de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Reynolds v. Select Properties Ltd., 93-1480, p. 1 (La.4/11/94), 634 So.2d 1180, 1182; see also Indep. Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 230. This Court will not disturb the trial court's granting of a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).
MCLNO raises three assignments of errors on appeal. In sum, MCLNO's arguments all suggest that the trial court erred in granting the motion for summary judgment because Ms. Jordan failed to meet her burden of showing there was no genuine issue of material fact and that she also failed to properly establish all the elements of her claim. More specifically, MCLNO asserts that Ms. Jordan must prove that a reasonable person in her position would have rejected the procedure had she been adequately informed of the risks.
In a medical malpractice case the plaintiff must prove: 1) the established standard of care; 2) the health care provider's breach of that standard of care; and 3) the causal connection between the health care provider's alleged negligence and the plaintiff's claimed injuries. Lugenbuhl v. Dowling, 96-1575 (La.1997), 701 So.2d 447, 456 (citing Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94) 643 So.2d 1228; La. R.S. 9:2794). The courts' objective test for determining causation is whether a reasonable person in the patient's position would have consented to the procedure if fully informed of the risks and complications. LaCaze v. Collier, 434 So.2d 1039, 1048 (La.1983). Generally, the question of causation is one for the trier of fact, in this case the trial court. See Id. When considering the element of causation the fact finder may consider the condition of the patient at the time and the necessity of the medical treatment. Id.
In the instant case, Ms. Jordan sufficiently proved each element required for a claim in medical malpractice. La. R.S. 40:1299.40[2] provides the prevailing standard *1143 of care a health care provider must adhere to in order to secure valid informed consent. The breach of that standard of care was established through Ms. Jordan's affidavit stating that she was not informed as to the risks associated with the vaginal hysterectomy and that she never signed a consent form for the procedure. Additionally, the certified copy of her medical record lacked any indication that written or verbal consent was obtained, which further supports Ms. Jordan's statements.
As for the causation inquiry, the trier of fact is charged with determining causation or whether a reasonable person in the patient's position would have consented to the procedure had full disclosure been made. See LaCaze, supra. Ms. Jordan's medical record provided the trial court with information regarding Ms. Jordan's condition at the time of the operation and the necessity of the procedure. Accordingly, based on the evidence in the record, we cannot find the trial court's finding of causation to be clearly wrong or manifestly erroneous.
Furthermore, Ms. Jordan was able to establish her injuries through the affidavit of Bernard Manale, M.D. Dr. Manale, a board certified physician for orthopedic and orthopedic surgery, related Ms. Jordan's nerve injury to the vaginal hysterectomy. Also, vocational and rehabilitation counselor, Larry Stokes, Ph.D., performed a vocational assessment based on Ms. Jordan's physical limitations due to the injuries caused by the vaginal hysterectomy. Dr. Stokes' report provided the trial court with a detailed account of Ms. Jordan's medical history, present medical condition, physical limitations, education, and work history. His evaluation determined that because of Ms. Jordan's physical condition she had experienced a complete loss of her *1144 annual earning capacity. Using Dr. Stokes' assessment, economist, Kenneth Boudreaux, Ph.D., calculated Ms. Jordan's past loss wages to be $87,126.57 with the present value of total and permanent disability economic loss for pretax income to age 65 to be in the range of $258,153.26 to $304,559.71. These undisputed calculations provided the court with the quantum for Ms. Jordan's loss of earning capacity.
Ms. Jordan thoroughly documented her damages and proved the essential elements of her claim without any countervailing evidence being offered. Based on the record and the severity of Ms. Jordan's injuries, the trial court did not err in the granting of the summary judgment and award of damages. Accordingly, we affirm.
AFFIRMED.
TOBIAS, J., concurs and assigns reasons.
TOBIAS, J., Concurs and Assigns Reasons.
The procedural issue in this case is whether the state should be treated differently in this matter than any other person. Article XII, § 10(A) mandates that "[n]either the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property." This means that the state of Louisiana should be treated the same as any other person in a court when a claim is based upon a cause of action in tort or contract. See Segura v. Louisiana Architects Selection Bd., 362 So.2d 498 (La.1978) and its progeny.
The appellant was late in responding to discovery. Additionally, the appellant did not timely submit its opposition to the motion for summary judgment of the appellee, Ms. Jordan. Only with its motion for new trial, after the trial court rendered judgment in favor of the Ms. Jordan on her motion for summary judgment, did the appellant file a motion for new trial with the affidavit of the physician asserting that the appellee signed a form consenting to the surgery and that the physician explained the risks of the surgery to the appellee.
The appellant, in response to a discovery request, submitted the complete medical record from MCLNO of the appellee; the response was given prior to the date Hurricane Katrina impacted the New Orleans area, so the appellant cannot properly assert that the consent form was destroyed by the hurricane unless one is to believe that the appellant withheld the consent form when it provided Ms. Jordan's complete medical record at MCLNO. No consent form was contained in the record. (Certainly it is possible in a hospital a large as the MCLNO a record can become misfiled or misplaced.)
Under these circumstances, I cannot find that the trial court abused its discretion in either refusing to let the appellant file its late opposition to the motion for summary judgment or in denying the motion for new trial of the appellant. I therefore respectfully concur in the decision of the majority.
NOTES
[1] La. C.C.P. art. 966(B) requires opposing affidavits and any memorandum in support thereof to be served at least eight days prior to the date of hearing.
[2] LSA-R.S. 40:1299.40 states in pertinent part:

A. (1) Notwithstanding any other law to the contrary, written consent to medical treatment means the voluntary permission of a patient, through signature, marking, or affirmative action through electronic means pursuant to R.S. 40:1299.40.1, to any medical or surgical procedure or course of procedures which sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures; acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner; and is evidenced by a signature, marking, or affirmative action through electronic means, by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent, by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.
(2) In addition to the information required to be disclosed in Paragraph (1) of this Subsection, where the medical treatment involves the surgical implantation of "Norplant" contraceptive devices, the explanation to the patient shall include the known and significant or other material risks, the known adverse results, and alternative methods of contraception.
B. Except as provided in Subsection A of this Section, no evidence shall be admissible to modify or limit the authorization for performance of the procedure or procedures set forth in such consent.
C. Where consent to medical treatment from a patient, or from a person authorized by law to consent to medical treatment for such patient, is secured other than in accordance with Subsection A above, the explanation to the patient or to the person consenting for such patient shall include the matters set forth in Paragraph (1) of Subsection A above, and an opportunity shall be afforded for asking questions concerning the procedures to be performed which shall be answered in a satisfactory manner. Such consent shall be valid and effective and is subject to proof according to the rules of evidence in ordinary cases.
* * * * * *
E. (1) As used in this Subsection, "secretary" means the secretary of the Department of Health and Hospitals.
(2)(a) In a suit against a physician or other health care provider involving a health care liability or medical malpractice claim which is based on the failure of the physician or other health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or other health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.